**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

DANIEL GALLAGHER,                    )
                                     )
            Plaintiff,               )
                                     )
    vs.                              )        Case No. 4:24-cv-00159-MTS
                                     )
STEPHEN EDWARD COOPER, *et al.*,     )
                                     )
            Defendants.              )

<u>**MEMORANDUM AND ORDER**</u>

This matter is before the Court upon initial review pursuant to 28 U.S.C. § 1915(e)(2).  *See also id.* § 1915A(a).  Upon review, the Court will sever Plaintiff's misjoined claims relating to the events of January 3, 2020, from this action.  *See* Fed. R. Civ. P. 21.  Additionally, the Court concludes that Plaintiff's claims for excessive force relating to the events of November 28, 2019, fail to state any actionable claims or establish entitlement to any form of relief.  As such, the Court will dismiss those claims for failure to state a claim on which relief may be granted.  *See* 28 U.S.C. § 1915(e)(2)(B).

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed without full payment of the filing fee if it is frivolous, malicious, or fails to state a claim upon which relief may be granted.  To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679.   The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016).

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015).   However, even self-represented litigants are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## Background

The allegations in the instant case relate to two separate altercations between Plaintiff and St. Louis City Police Officers.  The first altercation Plaintiff had with the St.

Louis City Police Officers occurred on or about November 28, 2019. The second altercation occurred on or about January 4, 2020.[1]

According to a probable cause statement issued in *State v. Gallagher*, No. 1922-CR03716 (22nd Jud. Cir., St. Louis City Court), by St. Louis City Police Officer Stephen Cooper, the following occurred:

> I responded to multiple calls of a suspicious person banging on vehicles and yelling [at 4315 Itaska Street]. As I arrive[d] I observed citizens pointing at the defendant. I approach the defendant to communicate with him when he then took a fighting stance. I requested the defendant to place his hands behind his back to detain him while I further investigated and the defendant refused to comply. The defendant punched me in the face while I was attempted to place a handcuff on him. The defendant continued to punch me and I then wrestled him to the ground. The defendant was eventually detained and arrested with the assistance of other officers.

> PO Schmidt spoke with a witness on the scene that informed me while he was driving on Gravois, he observed the defendant standing in the middle of the street with a metal pole in his hand. Once the witness drove past the defendant, the defendant struck the window with the pole causing it to shatter.

An information was filed on November 29, 2019, charging Plaintiff with assault in the fourth degree – special victims; resisting arrest; and property damage in the second degree. A warrant was served on that same date, and a detention hearing was held on December 2, 2019, at which time Plaintiff was released on his own recognizance. Although Plaintiff had his bond revoked on several occasions due to his incarceration for other matters, he eventually pleaded guilty on March 23, 2023, and was sentenced on that same date to 364 days in jail. *Id.*

---

[1] As set forth in more detail below, because the second set of claims in this action have been improperly joined, the Court will sever and dismiss those claims without prejudice with leave for Plaintiff to refile those claims in a newly filed action if he so chooses.

Plaintiff was charged by criminal complaint on January 4, 2020, with kidnapping in the second degree, unlawful possession/transport/manufacture/repair or sale of an illegal weapon, property damage in the first degree, resisting or interfering with an arrest, and domestic assault in the fourth degree. *State v. Gallagher*, No. 2022-CR00040 (22nd Jud. Cir., St. Louis City Court). The probable cause statement completed by St. Louis City Police Officer Cooper on January 4, 2020, stated as follows:

> On January 3, 2020, we received a call for a "fight" in progress at the above location. Upon our arrival we observed Defendant standing over Meaghan Chamblin in a threatening manner, and holding her down. As we approached Defendant, Defendant released Meaghan Chamblin and ran inside his house. After Meaghan Chamblin was released, she informed us that Defendant had a gun on his person. She further informed us that prior to our arrival, she was attempting to leave the residence when Defendant told her that she could not leave. Defendant then proceeded to push and drag Chamblin back to the front of the house where he physically held her there until we arrived. Chamblin was in fear for her safety because Defendant had a gun on his person, and believed that she could not freely walk away.

> We responded to the front door of the residence. Defendant refused to come out of the residence after we informed him that he was under arrest for domestic assault. Due to our unsuccessful attempts to place defendant under arrest, we had to deploy a Taser on defendant. Defendant continued to physically resist being placed under arrest. After defendant was apprehended we discovered a switchblade in Defendant's jacket pocket. The switchblade had knuckles attached to the handle.

> Further investigation revealed that immediately prior to our arrival, Defendant had drove his vehicle into Chamblin's Honda Civic sedan. I observed damage to the vehicle that exceeded $750 dollars.

> I believe that Defendant is a danger to the victim because he has previously assaulted me in a separate pending matter, and I believe he may assault the victim again if he has the opportunity.

Plaintiff pleaded guilty to felony unlawful possession/transport/manufacture/repair or sale of an illegal weapon and misdemeanor resisting arrest on March 23, 2023.  *State v. Gallagher*, No. 2022-CR00040-01 (22nd Jud. Cir., St. Louis City Court).  He was sentenced to 364 days in jail.  *Id.*

### The Complaint

Plaintiff, a pretrial detainee incarcerated at St. Louis City Justice Center, filed the instant Complaint on January 29, 2024, pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights.  Doc. [1].  He brings this action against six St. Louis City Police Officers: Stephen Edward Cooper; Hajrudin Ducanovic; Zachary Steven Schmidt; Louis J. Naes, IV; Robert Brennan; and David H. Grove.  Plaintiff sues Defendants in both their individual and official capacities.

As noted above, Plaintiff brings two separate claims for relief in this action. Plaintiff's first claim relates only to events that occurred on November 28, 2019.  He asserts that on the morning of November 28, 2019, he left his residence on or near the 4300 block of Itaska Street in St. Louis to get "some exercise."  He alleges that when he heard someone shout, his initial response was that he was being robbed, and that the man did not identify himself as a police officer.  Plaintiff does not indicate which of the Defendants came towards him; however, he states that one of the Defendants, who was in a police uniform, attempted to grab his arm.  Plaintiff does not indicate what his response was to the uniformed police officer; however, he states that when he turned away from the officer, he "saw a marked police SUV and a uniformed officer charging [him]."  At that point, Plaintiff asserts that he was "tackled [to] the ground" and "placed in

handcuffs."    Plaintiff identifies the two officers who placed him in handcuffs as Defendants Cooper and Ducanovic.

Plaintiff alleges that he was placed face-down on the pavement near the police SUV.  "[A]s more officers arrived at the sceen [sic] they began to twist [his] restrained arms, step on the back of [his] knees, legs and back in an attempt[t] to make [him] pass out."  Plaintiff alleges that his face was slammed in the pavement several times which caused a laceration under his left eye.  He states that one officer asked him acerbically, "Why are you bleeding on my floor?"  Moreover, he asserts that no less than five officers participated in the assault, causing injuries which necessitated his transfer to Barnes Hospital.  Nonetheless, Plaintiff has failed to indicate exactly which of the Defendants allegedly caused each of his alleged injuries.  He simply indicates that he was attacked by a group of officers.

Plaintiff's second claim relates to events that allegedly occurred on or about January 3, 2020.  He states that he had a "verbal confrontation" with his fiancée, Meaghan Chamblin, in front of his home, and one of his neighbors heard the disagreement and called the police.  Plaintiff reports that he was outside talking with Ms. Chamblin at the time Officer Cooper arrived, and he alleges that he stood in his doorway and "attempted to explain to the officer the situation."  Plaintiff states that an unnamed officer who was at the scene stated, "Someone does not want what you know getting out."  Plaintiff took this statement as a threat, became alarmed, and attempted to shut the door to his home.  He claims that unnamed officers attempted to force entry into his home, and "one officer deployed a tazer [sic] to no effect."

- 6 -

By this point, Plaintiff claims the officers were inside of his home, and he kneeled, with his hands behind his head.  He asserts that Officer Cooper then kicked him in the back and began punching him in the head, while another unnamed officer grabbed Plaintiff's leg and tasered him. Plaintiff states that several of the officers identified themselves as those who had "assaulted" him on a prior occasion.  These officers then unlawfully searched his home without a warrant, took several items, and then placed Plaintiff under arrest and charged him with multiple felonies.

For relief, plaintiff seeks damages and injunctive relief.

## Discussion

### A.  Misjoinder of Claims

Plaintiff has included in his complaint two separate allegations of excessive force brought pursuant to the Fourth Amendment.   Each of these allegations purportedly occurred on different dates, in different places, and involved different factual circumstances.  Allowing Plaintiff to include these claims in one individual action raises issues under Federal Rule of Civil Procedure 18[2] and 20.[3]  "Unrelated claims against different defendants belong in different suits, . . . [in part] to ensure that prisoners pay the

---

[2] Rule 18(a) of the Federal Rules of Civil Procedure governs joinder of claims, and provides:

A party asserting a claim to relief as an original claim, counterclaim, cross claim, or third party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.

[3] Rule 20(a)(2) of the Federal Rules of Civil Procedure governs joinder of defendants, and provides:

Persons . . .  may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

In *George v. Smith*, 507 F.3d at 607, the Court of Appeals for the Seventh Circuit held that unrelated claims brought by prisoner plaintiffs against different defendants belong in separate lawsuits, not only "to prevent the sort of morass" produced by multi-claim, multi-defendant cases like this one, but also to ensure that prisoners pay all fees required under the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b), (g). Complaints like this one should be rejected, *George*, 507 F.3d at 607, either by severing the action into separate actions or by dismissing improperly joined defendants. *See* Fed. R. Civ. P. 21; *DirecTV, Inc. v. Leto*, 467 F.3d 842, 844–45 (3rd Cir. 2006); *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000); *Michaels Bldg. Co. v. Ameritrust Co.*, 8 F.2d 674, 682 (6th Cir. 1988).

Federal Rule of Civil Procedure 21 provides that "the court may at any time, on just terms, add or drop a party." It also adds that the court may "sever any claim against a party." Fed. R. Civ. P. 21. Severance is appropriate when the claims are "discrete and separate," each capable of resolution without dependence or effect on the other. *See Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 442 (7th Cir. 2006) (citations omitted).

When determining whether to sever claims pursuant to Rule 21, district courts often consider (1) whether the issues sought to be severed are significantly different from one another and would require distinct evidentiary proof; (2) whether severance would

promote judicial economy; and (3) whether either party will be unduly prejudiced by severance or its absence. *See Official Comm. of Unsecured Creditors v. Shapiro*, 190 F.R.D. 352, 355 (E.D. Pa. 2000) (citation omitted). These same considerations are frequently utilized when examining a motion to bifurcate claims under Rule 42(b). *See, e.g.*, *Griffith v. Allstate Ins. Co.*, 90 F. Supp. 3d 344, 346 (M.D. Pa. 2014); *Goldstein v. Am. States Ins. Co.*, 2:18-cv-3163-MMB, 2018 WL 6198463, at *1–2 (E.D. Pa. Nov. 28, 2018) (citing *Shapiro*, 190 F.R.D. at 355).

Considering the joinder rules, Plaintiff's claims relating to January 3, 2020, should be severed and dismissed, without prejudice, from this action. Those claims are unrelated to the claims against Defendants concerning the events of November 28, 2019. Accordingly, the Court will only consider the excessive force claims relating to November 28, 2019, in the present lawsuit. If Plaintiff wishes to file a new action concerning the January 3, 2020, claims he may do so in a separate action.

## B. Plaintiff's Excessive Force Claims Relating to November 28, 2019, Are Subject to Dismissal

Having carefully reviewed and liberally construed Plaintiff's pleading, the Court concludes that Plaintiff's claims for excessive force relating to the events of November 28, 2019, fail to state any actionable claims or establish entitlement to any form of relief.[4]

---

[4] The Court takes judicial notice of Plaintiff's arrest record and guilty plea regarding the November 28, 2019, incident mentioned in the Complaint, as set forth in detail above. *See State v. Gallagher*, No. 1922-CR03716 (22nd Jud. Cir., St. Louis City Court).

### 1. Plaintiff Fails to Make Specific Allegations of Excessive Force Against Defendants

Although Plaintiff lists each of the Defendants in the caption of his Complaint, Plaintiff makes no specific allegations of excessive force against specific Defendants in his pleading.  Rather, he makes general allegations of harm against all the Defendants. Plaintiff cannot assess harm to the group to set forth an excessive force claim.

"Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights). Because Plaintiff does not allege, with any specificity, exactly how each of the St. Louis City Police Officers acted with excessive force on November 28, 2019, Defendants must be dismissed from this matter. *See Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) (per curiam) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints."); *see also Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) (per curiam) (affirming dismissal of pro se complaint against defendants who were merely listed as defendants in the complaint and there were no allegations of constitutional harm against them).

### 2. Plaintiff's Official Capacity Claims Against Defendants Fail to State a Claim Upon Which Relief May be Granted

Plaintiff names Defendants in both their official and individual capacities in this action. However, an action brought against a government official in his or her official capacity pursuant to § 1983 is not one against the official but rather one against the official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, an official-capacity action generally represents a "way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). In other words, the real party in interest in an official-capacity suit is not the named official, but the governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

Plaintiff's official capacity claims against Defendants must be treated as claims against the governmental entity which employs them, the City of St. Louis. In *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978), the Supreme Court held that a municipality or local governing body can be directly liable under § 1983. Such liability may attach if a constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018); *see also Marsh v. Phelps Cnty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").

Plaintiff fails to make any assertions against the City of St. Louis in his Complaint and makes no allegations that could be construed as *Monell* claims. There are no claims of a constitutional violation by the City resulting from any policy, custom, or deliberately indifferent failure to train or supervise. As such, Plaintiff's official-capacity claims against Defendant police officers fail to state a claim for relief and must be dismissed under 28 U.S.C. § 1915(e)(2)(B).

### 3. Plaintiff's Individual Capacity Claims for Excessive Force Are Subject to Dismissal

"The Fourth Amendment protects citizens from being seized through excessive force by law enforcement officers." *Thompson v. City of Monticello*, 894 F.3d 993, 998 (8th Cir. 2008); *see also Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005) ("The right to be free from excessive force is included under the Fourth Amendment's prohibition against unreasonable seizures of the person.").

Plaintiff alleges two separate instances of excessive force on November 28, 2019. He first states that an unknown man who did not identify himself as a police officer, but who was wearing a uniform, attempted to grab his arm. Although Plaintiff does not indicate if he attempted to evade the maneuver, he states that when he turned away from the officer, he "saw a marked police SUV and a uniformed officer charging [him]." At that point, Plaintiff asserts that he was "tackled [to] the ground" and "placed in handcuffs." Plaintiff identifies the two officers who placed him in handcuffs as Defendants Cooper and Ducanovic. This instance, the mere tackling of Plaintiff to the ground to place him in handcuffs when Plaintiff admits to turning away from a uniformed

police officer, cannot be said to be clearly established as excessive force—especially when Plaintiff does not indicate he was hurt by either the handcuffing or being thrown to the ground to be handcuffed.

In fact, the Eighth Circuit has rejected an excessive force claim where an officer "forcefully threw" a plaintiff to the ground, pinned him down, and placed his weight into the plaintiff's back before handcuffing him, even though the plaintiff was suffering from diabetic shock and was only "passively resistant." *Wertish v. Krueger*, 433 F.3d 1062, 1068 (8th Cir. 2006); *see also Crumley v. City of St. Paul*, 324 F.3d 1003, 1008 (8th Cir. 2003) (finding no excessive force in securing handcuffs so tightly they made plaintiff's hand bleed (citing *Rodriguez v. Farrell*, 280 F.3d 1341, 1352 (11th Cir. 2000) (stating "[p]ainful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal."))); *Nolin v. Isbell*, 207 F.3d 1253, 1257-58 (11th Cir. 2000) (holding as a matter of law the amount of force used during an arrest to handcuff a suspect was not excessive and would not defeat an officer's qualified immunity where the resulting injury was merely bruising).

The next event that occurred on November 28, 2019, is, according to Plaintiff, much more egregious. He states that unnamed officers placed him restrained, face-down on the pavement, stepped on his arms, back, knees and legs, and attempted to make him pass out. Plaintiff also asserts that officers slammed his face into the pavement repeatedly and caused a laceration over his eye. Although Plaintiff indicates that five officers participated in the assault, he has not indicated which of the officers allegedly

caused any of his injuries, *i.e.*, which specific officer hit, kicked or stepped on him or caused his head/eye injuries.

As noted above, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015); *accord Whitson v. Stone Cty. Jail*, 602 F.3d 920, 928 (8th Cir. 2010). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006); *see also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights); *Love v. Schoffman*, 142 F. App'x 278, 279 (8th Cir. 2003) (per curiam) (affirming pre-service dismissal under 28 U.S.C. § 1915 because the complaint, among other infirmities, "did not specify which of the many named defendants was responsible for each of the alleged harms"). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019); *see also Pitts v. City of Cuba*, 913 F. Supp. 2d 688, 708 (E.D. Mo. 2012) (noting that, "in order to state a cognizable Section 1983 claim, a complaint must set forth specific factual allegations showing what each named defendant allegedly did, or failed to do, that allegedly violated the plaintiff's federal constitutional rights").

In this instance, Plaintiff has failed to connect any one of the Defendants to this incident. A plaintiff is the master of his own complaint, and the Court cannot assume facts that are not alleged. *Stone v. Harry*, 364 F.3d 912, 914–15 (8th Cir. 2004). Thus,

Plaintiff has not stated a claim upon which relief can be granted. *See Manning v. Cotton*, 862 F.3d 663, 669 (8th Cir. 2017) (noting that a person may only be held liable for a constitutional violation if his or her own conduct violated a clearly established constitutional right).  The Court will dismiss the claim without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's excessive force claims relating to the events of January 3, 2020, are **SEVERED and DISMISSED**, without prejudice, due to improper joinder.  *See* Fed. R. Civ. P. 21.  Plaintiff may refile these claims in a separate complaint if he so chooses.

**IT IS FURTHER ORDERED** that this action is subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FINALLY ORDERED** that Plaintiff's Motion for Appointment of Counsel, Doc. [2], is **DENIED** as moot.

A separate Order of Dismissal shall accompany this Memorandum and Order.

Dated this 2nd day of August 2024.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE